The arrangement which was referred to in the letter as having been agreed on was to this effect, that as Hill had gone to the south to raise money to satisfy the execution against himself and Hogan, the property might be purchased at the sale by Hogan without an actual advance of the money (in order to prevent a sacrifice), and the defendants were to indulge Hogan for the money.
Before the day of sale Hill returned and made a payment to Hogan of $7,000. Hogan then wrote to the plaintiff, informing him that he was authorized by Gray Harper to attend to the business relative to the execution, and directing him to suspend the sale, and return the fi. fa. with an indorsement that the sale was postponed by consent of plaintiffs. Matlock, on receiving this letter, did postpone the sale, and returned thefi. fa. with his levy indorsed; and afterwards Hill having paid to the defendants the sum remaining due, no other execution ever issued.
Matlock applied to Harper, who was clerk of the court as well as plaintiff in the execution against Hill, before the payment made (3) by Hill to defendants, for a writ of ven. ex. to make the debt and his commissions, and Harper, as plaintiff, refused to issue the writ. At the time that Matlock postponed the sale and returned the execution he was ignorant of the fact that Hill had paid Hogan the $7,000.
Hogan's only authority was contained in the letter of Harper before set forth; and after writing that letter, Hogan informed both Gray and Harper of the contents thereof, and they sanctioned what he had done.
Matlock brought this suit for his commissions on the amount of the judgment against Hill and Hogan, and on the case as above set forth the court gave judgment for the defendants, and the plaintiff thereupon appealed to this Court.
The act of 1784, which is the only one in force relative to sheriffs' commissions, entitles them to 2 1/2 per cent forexecuting an execution against the body or goods. These expressions do not appear to me to warrant a different construction from that uniformly given to the words employed in 29 Eliz., ch. 4, which are levy or extend *Page 3 and deliver in execution. These words were intended to apply to all the various executions in England by which the body, lands, goods or chattels might be taken. Our act is confined to an execution against the body or goods. If upon a levy of a fi. fa. the sheriff is entitled to commissions, though the parties compromise before he sells any of the goods, under the statute of Elizabeth, it appears to me that he is equally entitled under our act. The case cited from 5 Term is a decision upon the very point, and it appears reasonable that after a sheriff has been at the trouble of levying upon goods, and perhaps incurred the risk of taking care of them till the sale, he should receive his commissions, notwithstanding the compromise of the parties. It is stated in this case that the sheriff levied, took the property into his possession, advertised the sale, and would of course have sold but for the letter of one of the defendants. These acts were all done for their benefit, and the (13) final act of selling was waived by them, as they had a right to do. But the sheriff being ready to sell, and being prevented by the defendants from so doing, was equivalent as between him and them to an actual sale, and entitled him to claim his commission from them. I think that after execution had been suspended by the defendants' direction, and the debt paid, the sheriff would have no right to take out a venditioni exponas
against the consent of the plaintiffs in the execution, to sell for his commissions merely.
The execution is under the control of the plaintiff, who had it in his power to provide for the payment of the commission before he interposes to stop it; and if he neglect to do so, it is just that he should be chargeable with them. A contrary rule, it appears to me, might lead to great oppression.
Whatever doubt might be entertained as to the authority given by Harper alone to Hogan, yet I think there can be none when both the defendants sanctioned what he had done. This is quite equal to an authority given by both when the letter was written.
There is, however, an objection made to the form of the action, which must prevail. It appears from the writ that the defendants are sued as administrators, which cannot be done when they are liable in their own right. The cause of action and the implied contract arose after the death of the intestate, and was occasioned by the personal act of the defendants. It would operate most unjustly towards creditors and next of kin if administrators might burthen the assets with claims in which their intestate had incurred no responsibility; yet if a recovery is permitted in this action the judgment will be, in the first place, against the goods of the testator, and the whole might be exhausted in discharge of that which the representative should properly answer in his own person. *Page 4 
The judgment of the Superior Court seems to have been rendered without any reference to this objection, and solely on the question (14) of law made in the case reserved; it ought, therefore, to be affirmed so far as the question relative to the form of the action is involved in it, and reversed so far as it relates to the question made in the case reserved. This is my opinion as to the proper manner of entering the judgment of this Court, under the act of 1818, sec. 4, "that the Supreme Court may render such judgment as, on an inspection of the whole record, it shall appear to them ought in law to be rendered thereon."